FILED
2020 AUG 11 PM 4:26
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EMILY GILBY; TEXAS DEMOCRATIC PARTY; DSCC; DCCC; AND TERRELL BLODGETT,<br>             PLAINTIFFS,<br><br>V.<br><br>RUTH HUGHS, IN HER OFFICIAL CAPACITY AS THE TEXAS SECRETARY OF STATE,<br>             DEFENDANT. | §§§§§§§§§§§§§<br><br>CAUSE NO. 1:19-CV-1063-LY |

## ORDER ON MOTION TO DISMISS

Before the court are the following motions: (1) The Texas Secretary of State's Motion to Dismiss filed December 12, 2019 (Doc. #5 in Cause No. 1:19-CV-1154-LY, which was consolidated into Cause No. 1:19cv1063 on December 30, 2019); Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss filed December 31, 2019 (Doc. #34); The Texas Secretary of State's Reply in Support of Her Motion to Dismiss the Blodgett Plaintiffs' Complaint filed January 7, 2020 (Doc. #35) and (2) The Texas Secretary of State's Motion to Dismiss filed December 10, 2019 (Doc. #21); Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss filed December 24, 2019 (Doc. #28); and The Texas Secretary of State's Reply in Support of Her Motion to Dismiss filed December 31, 2019 (Doc. #33). Also before the court are The Texas Secretary of State's Notice of Supplemental Authority in Support of Her Motion to Dismiss filed June 25, 2020 (Doc. #90) and Plaintiffs' Response to Notice of Supplemental Authority filed June 30, 2020 (Doc. #93). Having considered the motions, responses, replies, and supplemental authority, along with the applicable law, the court renders the following order on the motions to dismiss.

## I. BACKGROUND

This case involves the constitutionality of a Texas law that requires all early-voting polling locations to be open throughout the entire early-voting period. On June 14, 2019, Texas Governor Greg Abbott signed into law House Bill 1888 ("HB 1888"), which went into effect on September 1, 2019, amending Section 85.064 of the Texas Election Code to require that early voting at any polling location in Texas be available on the same weekdays as at the main early-voting polling locations for each county, and that any early-voting polling location remain open for at least eight hours each weekday it is open. Plaintiffs allege that HB 1888 effectively bans "temporary" or "mobile" early-voting locations with flexible hours and days, which provided early-voting opportunities to as many voters as possible, including young Texas voters living on or near college or university campuses or voters without reliable access to transportation. Plaintiffs assert that HB 1888 will continue to lead to substantially fewer early-voting opportunities for young and elderly voters without reliable access to transportation and is therefore unconstitutional under the First, Fourteenth, and Twenty-Sixth Amendments of the United States Constitution and violates the Americans with Disabilities Act ("ADA").

Plaintiffs include Emily Gilby, a registered voter in Williamson County, Texas, and student at Southwestern University serving as President of the Southwestern University College Democrats; Terrell Blodgett, a disabled 96-year-old registered voter in Travis County, Texas, who lives at Westminster senior-living facility; the Texas Democratic Party; and two national Democratic committees–Democratic Senatorial Campaign Committee and Democratic Congressional Campaign Committee (collectively, "Plaintiffs"). Plaintiffs challenge the constitutionality of HB 1888, asserting that HB 1888 limits equal access to early voting for a significant section of the Texas

electorate by making it more difficult for hundreds of thousands of Texas voters to participate in early voting in the communities in which they live and work, in violation of the First and Fourteenth Amendments. Further, Plaintiffs argue that HB 1888 violates the Twenty-Sixth Amendment, which explicitly protects young voters against such restrictions on the franchise and guarantees them a substantive right to participate equally with other qualified voters in the electoral process. Plaintiff Terrell Blodgett also alleges under Section 1983 of Title 42 of the United States Code that HB1888 violates the ADA in that HB 1888 renders the facilities for early voting in person inaccessible and unusable to Blodgett because of his disabilities. Plaintiffs request that the court render an order (1) declaring that HB 1888 violates the First, Fourteenth and Twenty-Sixth Amendments to the United States Constitution and Title II of the ADA, and (2) permanently enjoining Defendant Ruth Hughs, the Texas Secretary of State, from implementing, enforcing, or giving any effect to HB 1888.

Hughs is named in her official capacity as Texas's chief elections officer responsible for the administration and implementation of election laws in Texas. *See* Tex. Elec. Code Ann. § 31.001(a). Hughs moves to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). She raises three arguments in favor of dismissal. First, Hughs asserts that Plaintiffs cannot sue the Secretary of State because she does not enforce HB 1888. Second, Hughs argues that Plaintiffs lack standing because Plaintiffs purported injuries are speculative. Third, Hughs argues that HB 1888 is constitutional because it does not burden anyone's right to vote and as there is no constitutional right to early voting.

## II. STANDARD OF REVIEW

A party may challenge the court's subject-matter jurisdiction based upon the allegations on the face of the complaint. *See* Fed. R. Civ. P. 12(b)(1); *Barrera–Montenegro v. United States*, 74

F.3d 657, 659 (5th Cir. 1996). In ruling on a motion to dismiss for lack of subject-matter jurisdiction, "a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MD Physicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed jurisdictional facts. *Freeman v. United States,* 556 F.3d 326, 334 (5th Cir. 2009).

Plaintiffs must establish the elements of standing before a court exercises jurisdiction. The United States Supreme Court requires strict compliance with this jurisdictional-standing requirement. *See Chicago & G. T. Ry. Co. v. Wellman,* 143 U.S. 339, 345 (1892) (federal courts may exercise power "only in the last resort, and as a necessity"); *Muskrat v. United States,* 219 U.S. 346, 356 (1911) ("[F]rom its earliest history this [C]ourt has consistently declined to exercise any powers other than those which are strictly judicial in their nature"). This requirement assures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court expounded on the *Twombly* standard, explaining that

a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

### III. ANALYSIS

#### A. Authority of the Texas Secretary of State for Standing Purposes

Hughs asserts that Plaintiffs cannot establish standing to sue her because HB 1888 is implemented by local officials in Texas who determine the early-voting polling locations and is enforced through election contests filed by losing candidates, not by Hughs. Relying on the Fifth Circuit's recent opinion in *City of Austin v. Paxton*, Hughs argues that Plaintiffs cannot sue her for things she does not do. 943 F.3d 993, 998 (5th Cir. 2019) ("Where no state official or agency is named in the statute in question, we consider whether the state official actually has the authority to enforce the challenged law."). Hughs fails to acknowledge, however, that the circuit has already determined that she is the proper defendant in this case.

Plaintiffs' alleged injuries must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "The facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State of Texas itself and its Secretary of State, who serves as the 'chief election officer of the state.'" *OCA-Greater Houston v. Texas*, 867

F.3d 604, 613 (5th Cir. 2017) (quoting Tex. Elec. Code Ann. § 31.001(a)). HB 1888 creates no private right of action; rather, the statue applies to every election held in the Texas,[1] and, as the chief election officer of the state, the Texas Secretary of State "is instructed by statute to 'obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code.'" *Id.* at 613–14 (quoting Tex. Elec. Code Ann. § 31.003). Thus, Plaintiffs have met their burden to show that their alleged injury is traceable to and redressable by Hughs.

Hughs also raises the defense of state sovereign immunity, arguing that Plaintiffs have not complied with the strictures of the *Ex parte Young* exception to sovereign immunity because the Secretary of State has no connection with, and is not "threaten[ing] and [] about to commence proceedings" to enforce an invalid act. 209 U.S. 123, 155–56 (1908). This argument is similarly based upon Hughs's improper assertion that the Secretary of State does not enforce Texas election law. However, sovereign immunity cannot be asserted in this case. "[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)). Therefore, the immunity from suit that Texas and Hughs otherwise enjoy in federal court offers no shield in this case.

### B. Plaintiffs' Standing

Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute. "For a court to pronounce upon . . . the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra

---

[1] Tex. Elec. Code Ann. § 1.002(a).

6

vires." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2. In order to give meaning to Article III's case-or-controversy requirement, courts have developed justiciability doctrines, including standing. *Lujan*, 504 U.S. at 560. Because standing is an essential component of federal subject-matter jurisdiction, the lack of standing can be raised at any time by a party or by the court. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citing *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 348 (5th Cir.1989)). "In order to have constitutional standing, a plaintiff must establish (1) an injury in fact that is (2) fairly traceable to the challenged action of the defendant and (3) redressable by a favorable ruling." *Fusilier v. Landry*, No. 19-30665, 2020 WL 3496856, at *2 (5th Cir. June 29, 2020) (citing *Lujan*, 504 U.S. at 560–61). Plaintiffs seeking prospective relief to prevent future injuries must prove that their threatened injuries are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (internal quotation marks omitted). *See also Jacobson v. Florida Sec'y of State*, 957 F.3d 1153, 1201 (11th Cir. 2020).

Because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "[T]he presence of one party with standing is sufficient to satisfy Article III's

case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

### 1. Individual Plaintiffs' Standing

Hughs argues that Plaintiffs Emily Gilby and Terrell Blodgett's ("Individual Plaintiffs") alleged injuries are too speculative to support Article III standing because their assertion that they will be unable to access an early voting polling location in future elections has not been determined by Travis and Williamson County officials, who have the option to place the early voting polling locations near or far from Individual Plaintiffs. Such speculation, Hughs asserts, cannot establish an injury-in-fact. *See Clapper*, 568 U.S. at 410 ("[Plaintiffs'] theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending."). "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); *Clapper*, 568 U.S. at 414 n.5. Individual Plaintiffs' failure to identify the locations of future polling places, Hughs contends, fails to satisfy the "imminence requirement," mandating dismissal to avoid the "possibility of deciding a case in which no injury would have occurred at all." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 537 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 564 n.2).

In response, Individual Plaintiffs argue that their respective complaints specifically allege a substantial risk that injury will occur. Gilby's First Amended Complaint states that "Southwestern University will be unable to host a temporary early voting location." Blodgett's Original Complaint states that "[w]ith the advent of HB 1888, the mobile voting location was not available at Westminster for the November 2019 election," and that "for the upcoming 2020 election cycle, and

8

for as long as HB 1888 and its Section 5 restriction on the use and availability of temporary polling locations continues in effect, Plaintiffs and organizational plaintiff members will continue to have their ability to vote discriminatorily abridged." The court agrees. On a motion to dismiss the court can "presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Wildlife Fed'n,* 497 U.S. at 889. Therefore, the court concludes that Individual Plaintiffs have sufficiently pleaded Article III standing.

### 2. Committee Plaintiffs' Standing

Hughs argues that Plaintiffs Texas Democratic Party, Democratic Senatorial Campaign Committee, and Democratic Congressional Campaign Committee ("Committee Plaintiffs") lack organizational and associational standing. Additionally, Hughs asserts that Committee Plaintiffs lack statutory standing to assert a claim under Section 1983 of Title 42 of the United States Code. Having determined that Individual Plaintiffs' complaints specifically allege a substantial risk that injury has and will occur with the advent of HB1888 sufficient to confer standing under Article III, the court need not consider the standing issue as to the Committee Plaintiffs. *See Rumsfeld,* 547 U.S. at 52 n.2. *See also Bowsher v. Synar,* 478 U.S. 714, 721 (1986); *Sec. of Interior v. California,* 464 U.S. 312, 319, n.3 (1984).

### C. Constitutionality of HB 1888

Hughs asserts that regardless of whether or not Plaintiffs have standing, the court must dismiss Plaintiffs' claims because HB 1888 is constitutional, as it does not implicate Plaintiffs' right to vote, and satisfies the standard under the *Anderson-Burdick* framework.[2] Hughs argues that HB 1888 does not burden Plaintiffs' right to vote because there is no constitutional right to early voting

---

[2] *Anderson v. Celebrezze,* 460 U.S. 780 (1983); *Burdick v. Takushi,* 504 U.S. 428 (1992).

in a particular location or for a particular time, and HB 1888 protects Texas's interests in preventing gamesmanship by local officials, applies equally to all voters, and does not deny or abridge anyone's right to vote based on a voter's age. Finally, Hughs argues, Blodgett's attempt to bring his ADA claim through Section 1983 must fail because Section 1983 does not provide a cause of action for the alleged depravation of his rights under the ADA.

However slight [a state law's] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman v. Reed*, 502 U.S. 279, 288–289 (1992)). Plaintiffs need only allege that HB 1888 has or will burden their right to vote to survive a motion to dismiss. Having previously found that Plaintiffs have satisfied the pleading requirements to establish their standing requirements, the court concludes that Plaintiffs' claims under the First Fourteenth and Twenty-Sixth Amendments of the United States Constitution survive Hughs's motions to dismiss. None of the state interests Hughs provides justify HB 1888's burden on Plaintiffs' right to vote as a matter of law at this stage of the proceedings. The merit of Texas's purported interests cannot be decided on a motion to dismiss. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767-68 (5th Cir. 2019) (reversing district court that subjected plaintiff's allegations to "rigorous factual and evidentiary analysis" on motion dismiss because "[a]t this stage of the proceedings, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim"). The appropriate mechanism is by motion for summary judgment or trial. *Id.* at 767.

However, the court reaches a different conclusion with regard to Blodgett's Section 1983 claim arising from Hughs's alleged violations of the ADA. To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United

States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *see also Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (noting that whether plaintiff has been deprived of right secured by Constitution is threshold inquiry in Section 1983 claim). To the extent Blodgett seeks relief pursuant to Section 1983 for Hugh's violations of the ADA, that claim must fail because Section 1983 may not be used to enforce rights under a statute with its own specific remedial schemes. *See Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1989) ("Section 1983 is not an available remedy for the deprivation of a statutory right when the statute itself provides an exclusive remedy for violations of its own terms"). Because the ADA provides the exclusive remedy for disability discrimination, Blodgett must pursue his claims against Hughs for that cause of action pursuant to the processes provided specifically under the ADA. Therefore, the court will dismiss Blodgett's ADA claim brought under Section 1983.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that The Texas Secretary of State's Motion to Dismiss filed December 12, 2019 (Doc. #5) is **GRANTED IN PART AS FOLLOWS**: Plaintiff Terrell Blodgett's claim brought pursuant to Section 1983 of Title 42 of the United States Code for violations of the Americans with Disabilities Act is **DISMISSED**. In all other respects, the motion is **DENIED**.

**IT IS FURTHER ORDERED** that The Texas Secretary of State's Motion to Dismiss filed December 10, 2019 (Doc. #21) is **DENIED**.

SIGNED this \_\_\_11th\_\_\_ day of August, 2020.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE